*In re* DIHLE ESTATE

Docket No. 88651. Submitted April 8, 1987, at Detroit. Decided July 6, 1987.

John Dihle was appointed personal representative of the estate of Willard F. Dihle, deceased. During his tenure as personal representative, John Dihle commingled personal and estate funds and made unauthorized distributions to three of his four siblings, heirs to the intestate estate along with him. Dihle was removed as personal representative and a successor, Dennis F. Godin, was appointed. The Wayne County Probate Court approved, after a hearing, a final accounting by the successor personal representative. After a hearing the court granted Dihle's motion for reconsideration and an independent audit was conducted. At a hearing on the independent audit, Dihle's attorney expressed confidence in the audit. The court then adopted the findings of the auditors and taxed the cost of the audit to Dihle. Dihle moved to have the cost of the audit paid by the estate and for another hearing. The court, Frank S. Szymanski, J., denied both motions. Dihle appealed, seeking a remand for an evidentiary hearing on his claim. The successor personal representative cross-appealed, seeking costs and damages for a vexatious appeal.

The Court of Appeals *held:*

1. While there were numerous issues to be raised and decided, appellant only contests the nature of the distributions to siblings while Dihle was personal representative. No request for an evidentiary hearing was made below. No "claim" was made below. The statute cited by counsel for authority for such a claim had been repealed. Further, the issue Dihle raises is no longer in dispute.

2. While an issue devoid of merit was raised, the issues

REFERENCES

Am Jur 2d, Costs §§ 78-86.

Am Jur 2d, Courts § 84.

Amount of attorneys' compensation in proceedings involving wills and administration of decedents' estates. 58 ALR3d 317.

Personal liability of executor or administrator for fees of attorney employed by him for the benefit of the estate. 13 ALR3d 518.

meriting appellate review which could have been raised were not. The Court taxed costs to Dihle's attorney personally.

Affirmed.

COSTS — COURT RULES.

A court rule specifically authorizes the Court of Appeals to impose costs on an attorney for violation of the court rules (MCR 7.219[I]).

*Gerald R. Goulet,* for appellant.

*Donald A. Keller,* for appellee.

Before: DANHOF, C.J., and GRIBBS and K. JANSEN,* JJ.

PER CURIAM. John Dihle appeals as of right from an October 10, 1985, order by the Wayne County Probate Court, granting the successor personal representative's motion for entry of a final order. The estate cross-appeals, claiming that the instant appeal is vexatious. The estate seeks costs and damages it has incurred in defending the appeal, including attorney fees. MCR 7.216(C).

Willard Dihle died intestate on December 5, 1979. He was survived by five children, appellant, Gerald, Norman, William, and Carol. Carol is mentally incompetent and her interests were safeguarded by her legal guardian or guardian ad litem throughout the proceedings below.

Appellant, being the eldest child of the deceased, was appointed personal representative of the estate. On September 21, 1979, he filed an inventory indicating an estate value of $150,461. Appellant served as personal representative for over 3½ years until he was removed from that position pursuant to a motion brought by Gerald and Norman.

During appellant's tenure as personal represen-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tative, he filed only one annual account with the probate court. That account indicated an estate value of $148,360.61 and was filed on May 12, 1981. When he served as personal representative, appellant made several unauthorized distributions to his three brothers. The amounts of the unauthorized distributions are not in dispute. William received $19,620.06, Gerald received $12,500 and Norman received $16,290.38. Appellant asserts that these distributions were made at times when there was insufficient cash in the estate to cover the payments. In order to supply the necessary cash, defendant contends that he deposited $41,000 of personal funds into the estate.

Appellant's brothers did not dispute below that appellant commingled personal funds with the funds of the estate. However, they did initially contest the amount commingled.

In 1982, while appellant still served as personal representative, appellant demanded that Norman and Gerald repay to the estate the amounts they had received plus interest. When Norman and Gerald responded that the monies they had received were advancements, not loans, and that the estate was not entitled to interest, appellant apparently refused to close the estate. Appellant's refusal to close the estate appears to be the predominant reason Gerald and Norman moved the probate court to discharge appellant from his duties as personal representative.

On June 9, 1983, the probate court granted the motion and appointed an independent successor representative.

In a petition dated August 22, 1984, the successor representative petitioned for an order allowing a final account. In the motion, the successor representative averred that he had reconstructed and

verified every receipt, expense and advancement since the estate was opened. The successor representative acknowledged that the estate possessed $20,295.07 in excess assets and conceded that this amount should be disbursed to appellant since all parties agreed appellant had injected personal funds into the estate.

Another aspect of the petition to allow the final account was that it also requested the court to authorize the fiduciary fee and attorney fee as itemized in an attached document. More importantly, the last clause in paragraph 19 requested that the fiduciary fee and attorney fee be allowed "as payable from the referenced *excess* monies currently in the possession of the estate." The "excess" monies to which the petition referred was the approximately $20,000 which the successor representative conceded were personal funds appellant had injected into the estate. The petition did not set forth any reason why the fiduciary and attorney fees should be assessed solely against appellant. This unusual request was not drawn to the court's attention in either the title to the petition, its prayer, or in any other part of the petition. The amount of requested fees was $7,000.

The estate's petition was heard on December 5, 1984. At that time, Richard Kasaba, who had been the estate's attorney during the appellant's tenure as representative, withdrew as counsel for appellant and Gerald Goulet entered his appearance on appellant's behalf. During the hearing, Mr. Goulet stated, "My client indicated to me that he objects to the account," and later stated, "There is an amount of $40,000 that he feels is owed to him." At the hearing, none of the parties mentioned the fact that the proposed account assessed the fiduciary fee of the successor representative and attorney solely against the appellant. The probate court

ruled that it would adopt the final account as proposed.

Thereafter, appellant moved for reconsideration. A hearing on the motion was conducted on April 17, 1985. At that time appellant asserted that he had advanced $41,000 to the estate and that only $20,000 had been accounted for. Appellant requested that an independent audit be performed. The probate court granted appellant's motion on the condition that, if the independent audit disclosed a variance of less than five percent, appellant would be assessed the costs of the audit. At the rehearing, Mr. Goulet did not mention or raise the issue that the proposed final account which the court had initially accepted assessed the fees of the second fiduciary and attorney solely against appellant. Nor was an issue raised on the lack of a hearing to determine the reasonableness of the requested fees.

The independent audit was completed on June 28, 1985. It indicated cash receipts "from or on account of [appellant]" were $43,515. There is no explanation in the record why this amount is higher than the $41,000 appellant claimed he had injected into the estate. The audit concluded that appellant had already received $7,190 in cash disbursements and $4,350 in a disbursement of stock. When these amounts were subtracted from $43,515 in cash receipts, the audit concluded a gross balance of $31,975 was due appellant. However, the audit then charged appellant for all assets which had been in the estate at some time during appellant's tenure as representative and for which appellant could not account.[1] Six hundred sixty-two dollars in interest and $2,869 in stock dividends were unaccounted for. There had also

---

[1] The estate asserts in its appellate brief that over $400,000 passed through the estate during appellant's tenure.

been $160 cash on hand, $2,609 in a savings account, and personal effects valued at $1,921 which were listed in the original inventory for which appellant could not account. These items, totalling $8,221, were also charged against appellant. The audit concluded that the net amount due appellant was $23,754, or $3,458.93 higher than the amount the successor representative had concluded was due appellant. In the "Notes for the Court," the audit stated, "The personal representative charges his fees of $7,000 to [appellant] and not as an estate expense."[2]

Four days after the date appearing on the independent audit, a hearing was conducted on a petition by the estate for disbursement of funds. Appellant's counsel was late for that hearing. The hearing was finally commenced without his presence. During his absence, the attorney for the three other brothers argued that the independent account demonstrated that appellant "stole at least $8,000 from the estate" and that any discrepancy between the proposed final account and the independent audit were the results of appellant's fraud. When appellant's counsel appeared, he stated that he had just been handed a copy of the independent audit "two minutes ago" and had not been able to examine it. However, appellant's counsel stated a little later:

The audit of the CPA firm said $23,754.00 owed to my client.

---

[2] In the same section, the independent auditor noted a discrepancy between the initial annual account prepared by appellant when he was representative and the final account prepared by the successor representative. In the former, the $2,000 fee appellant collected as representative was charged as an estate expense. In the latter, it was charged as a partial distribution of appellant's share of his inheritance. The notes do not indicate how the fee was treated in the independent audit, i.e., whether it was listed as part of the $7,190 appellant was to have received as cash disbursement.

So, I really don't have any complaint as far as the amount. It is an accurate amount. They are a respectable CPA firm and I would assume that the $23,754.00 is the correct amount.

Upon that statement, the trial court ruled appellant was entitled to the $23,754 which the independent audit had determined were excess funds in the estate. However, contrary to his earlier ruling that costs of the independent audit would be assessed only if there was less than a five percent variance, the probate court also ordered, without explanation, that appellant bear the costs of the audit. It appears that the cost of the independent audit was $3,950.

On July 31, 1985, appellant filed two motions. One motion was to have the cost of the independent audit paid by the estate. The second motion in its heading requested distribution of estate assets, but in essence was a motion for another rehearing. It requested that appellant receive credit for $43,515 which appellant had deposited with the estate plus compound interest. However, the motion also acknowledged that appellant had already withdrawn $10,044.48 from the estate. Appellant also asserted that the savings account he believed contained $2,609 at the time of the initial inventory he later discovered was nonexistent. As to the allegedly unaccounted-for personal assets valued at $1,921, appellant contended that they were in his attic and available if the successor representative wanted possession. On these grounds, appellant argued that the independent audit should not have deducted the $2,609 and $1,921 from the amounts due him. However, these allegations implied that appellant was conceding that the successor representative had the right to deduct the other assets for which he could not

account. Thus, from appellant's motion, it was unclear whether appellant was claiming $43,515 plus interest, or $43,515 minus the $10,044.48 he had acknowledged he had already received plus interest, or $43,515 minus the $10,044.48 and minus the unaccounted-for assets which he did not contest. The "Conclusion" to the motion presented yet another formula:

> Now WHEREFORE, after review of the matter, this Court should order the Attorney for the Personal Representative, to re-compute the amount due and owing to John Dihle under the amount due and owing from the estate to John Dihle, by computing interest on $43,000.00, and by adding the costs of the personal effects and the non-existent Manufacturers Bank account, due to John Dihle.

The motion did not request an evidentiary hearing.

On September 11, 1985, an order effecting the court's July 2, 1985, bench ruling was entered. It ordered that the court's order of December, 1984, be modified and that the sum due appellant be increased $3,458.93. The order also provided that the costs of the independent audit be deducted from appellant's share of the estate. The December, 1984, order which was modified adopted the proposed final account. The net effect of modifying the previous order (which in turn adopted the proposed final account) was to continue to charge appellant with the $7,000 fees of the successor representative and attorney.

On September 25, 1985, a hearing was conducted on appellant's two motions. At the hearing, appellant's counsel reminded the court that it had initially ruled that appellant would only be required to pay the cost of the independent audit if

the variance which was discovered was less than ten percent.[3]

Also at the hearing, appellant's counsel, for the first time, brought to the court's attention that the proposed final account assessed the fiduciary and attorney fee of $7,000 solely against appellant. Evidently, appellant's counsel discovered this fact from the section entitled "Notes to the Court" in the independent audit. While appellant's counsel brought this fact to the court's attention during the hearing, he never filed a pleading seeking modification.

The attorney for the brothers responded that it was the prayer of the estate's attorney that the fiduciary and attorney fees be allowed against appellant for his mishandling of the estate as personal representative, that the assessment was in the proposed final account, and that the court "allowed that account as stated." The attorney for the estate argued that appellant had not pled an objection to his fees being assessed solely against appellant and asserted that the issue was not properly before the court. After further argument and after appellant himself made a statement on the record, which the court did not allow him to finish, the court took the matter under advisement. On October 16, 1985, the court entered an order denying both motions without explanation.

On appeal, despite issues which it appears could have been raised, appellant's counsel has elected to contest only the failure of the probate court to order an evidentiary hearing. The relief appellant seeks is a remand. Appellant's counsel asserts he demanded a hearing but the court refused and that a hearing on appellant's "claim" was required

---

[3] Appellant's counsel misstated the court's earlier bench ruling. The court had earlier held that costs would be assessed against appellant only if the variance was less than five percent.

pursuant to MCL 708.2; MSA 27.3178(414). It is asserted that a remand is necessary to afford appellant the opportunity to verify appellant's allegations as to the "loans to the heirs."

We first note, contrary to the assertion of appellant's counsel, that no request for an evidentiary hearing was ever made. Second, appellant never filed a claim with the estate as that term is used in MCR 5.706, formerly PCR 5.706. Third, we note that, even if defendant had filed such a claim, the statute that counsel cited for authority was repealed by 1978 PA 642, effective July 1, 1979. Fourth, appellant asserts only that a remand is necessary to determine the amount of the "loans." This fact no longer appears to be in dispute. Neither the estate nor appellant's heirs have disputed the finding of the independent auditor that appellant injected $43,515 into the estate. Noticeably absent from the appellant's brief is any assertion that an evidentiary hearing is necessary to determine questions which appear to remain in dispute, for example, whether the savings account which was purported to contain $2,609 did in fact exist.

In the instant case, appellant had ample opportunity to request an evidentiary hearing below and did not do so. We would loathe a remand in light of the number of times appellant's counsel appeared before the probate court and never made or pled such a request and never tendered testimony or documentary evidence[4] and in light of the number of years the administration of the estate has dragged on without resolution. While appellant

[4] While appellant's counsel has consistently pointed to the cancelled checks evidencing the unauthorized advances, these checks are not proof of the amount appellant deposited with the estate to fund the advances. Comparing the total of the advances with the $41,000 (or $43,515) which appellant alleges he deposited with the estate, it is evident that the advances were not totally funded by appellant.

twice moved for rehearings, the hearings on the motions were conducted informally. All parties appeared satisfied to rely upon the unsworn factual assertions of their legal representatives.

We conclude that appellant has not preserved the issue he now attempts to raise. Even if the issue had been preserved, for the reasons stated above, it is without merit.

More troublesome is the estate's cross-appeal alleging vexatious appeal. MCR 7.216(C) provides:

> (1) The Court of Appeals may, on its own initiative or the motion of any party, assess actual and punitive damages, or take other disciplinary action when it determines that an appeal or any of the proceedings in an appeal was vexatious because
>
> (a) the appeal was taken for purposes of hindrance or delay or without any reasonable basis for belief that there was a meritorious issue to be determined on appeal; or
>
> (b) a pleading, motion, argument, brief, document, or record filed in the case or any testimony presented in the case was grossly lacking in the requirements of propriety, violated court rules, or grossly disregarded the requirements of a fair presentation of the issues to the court.
>
> (2) Damages may not exceed actual damages and expenses incurred by the opposing party because of the vexatious appeal or proceeding, including reasonable attorney fees, and punitive damages in an added amount not exceeding the actual damages. The court may remand the case to the trial court or tribunal for a determination of actual damages.

We have concluded that the issue raised on appeal is totally without merit. We also note that appellant's counsel's brief on appeal is sadly lack-

ing. Two aspects of the brief's deficiencies have already been mentioned, the factual misstatement that an evidentiary hearing was demanded and the fact that the statute upon which appellant relies was effectively repealed seven years prior to the filing of the brief. Also, appellant's counsel in his brief cites to cases without reference to the reporters in which they are to be found or the year in which they were decided. Other defects, minor in nature, include numerous misspellings and typographical errors.

It is also relevant to our disposition that appellant's counsel has failed to raise significant issues on his client's behalf. Was the $7,000 fee of the successor representative and attorney properly assessed against appellant? Was the $3,950 cost of the independent audit properly charged against defendant? May a former personal representative be held personally and absolutely liable for assets of an estate which the successor representative determines cannot be accounted for?[5]

In the instant case, it appears that issues which merited appellate review could have been raised and were not. Instead, an issue devoid of merit was raised. In such a situation, we are disinclined to assess damages for vexatious appeal against appellant; appellant has already suffered harm by the manner his appeal has been prosecuted in that full review has been lost.

However, we do award the estate costs pursuant to MCR 7.219. These costs are to be taxed personally against Gerald Goulet, a remedy which MCR 7.219(I) expressly authorizes.

Affirmed.

---

[5] We express no opinion how such issues would be decided if they had been raised. Issues are best resolved when tested by adversarial briefs.